UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
BRICKLAYERS INSURANCE AND WELFARE
FUND BRICKLAYERS PENSION FUND,
BRICKLAYERS SUPPLEMENTAL ANNUITY
FUND, BRICKLAYERS and TROWEL TRADES
INTERNATIONAL PENSION FUND, NEW YORK
CITY and LONG ISLAND JOINT APPRENTICESHIP
and TRAINING FUND, INTERNANTIONAL
MASONRY INSTITUTE and JEREMIAH
SULLIVAN, JR. in his fiduciary capacity as
Administrator, BRICKLAYERS LOCAL 1,
INTERNATIONAL UNION OF BRICKLAYERS and
ALLIED CRAFT WORKERS and BRICKLAYERS
LABOR MANAGEMENT RELATIONS
COMMITTEE,

**OPINION & ORDER**
12-CV-3940 (DLI)(RML)

　　　　　　　　　Plaintiffs,

　　　　　　　-against-

P.P.L. CONSTRUCTION SERVICES CORP.,

　　　　　　　　　Defendant.
------------------------------------------------------------------ X

**DORA L. IRIZARRY, United States District Judge:**

　　　On August 8, 2012, the trustees of the Bricklayers Insurance and Welfare Fund,

Bricklayers Pension Fund, Bricklayers Supplemental Annuity Fund, Bricklayers and Trowel

Trades International Pension Fund, New York City and Long Island Joint Apprenticeship and

Training Fund, the International Masonry Institute (collectively, "Funds"), and Jeremiah

Sullivan, Jr., in his fiduciary capacity as Administrator of Bricklayers Local 1 ("Local 1"),

International Union of Bricklayers and Allied Craft Workers, and Bricklayers Labor

Management Relations Committee (collectively, "Plaintiffs"), brought this action against

defendant P.P.L. Construction Services Corp. ("P.P.L." or "Defendant") seeking to recover

unpaid employee benefit fund contributions and unremitted dues checkoffs pursuant to Section

515 and 502(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1145, and Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.  Plaintiffs moved for partial summary judgment on their right to compel an audit of Defendant's books and records pursuant to a binding collective bargaining agreement ("CBA").  Defendant opposes the motion on the basis that it not a party to the CBA in question, and, therefore, is not obligated to submit to an audit.  Defendant also asserts as a defense that it has tendered all payments due through August 2012.  For the reasons stated below, Plaintiffs' motion is granted.

## BACKGROUND

### I.     Defendant Failed to Comply with Rule 56.1

Local Civil Rule 56.1 requires a summary judgment movant to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  It also requires the opposing party to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  If the opposing party then fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule. *See* Local R. 56.1(c); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

As Plaintiffs note, Defendant's Rule 56.1 Response fails to grasp the function, if not the form, of this rule.  Rather than a correspondingly numbered paragraph response to Plaintiffs' sixteen, detailed, and purportedly undisputed materials facts, Defendant instead put forward five numbered responses, all lacking in detail.  Because Defendant's Rule 56.1 statement largely

ignores Plaintiffs' contentions, the Court is unable to fully utilize it for its intended purpose. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."). However, the Court is mindful that "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Giannullo*, 322 F.3d at 140 (quoting *Holtz*, 258 F.3d at 74). Moreover, a district court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules" and "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Holtz*, 258 F.3d at 73 (citation omitted). Accordingly, to the extent the Court relies upon the uncontroverted paragraphs of Plaintiffs' Rule 56.1 Statement, the Court will do so only where the record duly supports Plaintiffs' contentions and where no rule of evidence bars admission.

In light of Defendant's failure to comply with Rule 56.1, it is not surprising that the parties present two very different and disjointed accounts of the facts. Plaintiffs contend that it is an undisputed fact that "P.P.L. is party to a [CBA] with Local 1." (Plaintiffs' Rule 56.1 Statement ("Pls. 56.1"), Docket Entry No. 16-2, ¶ 1.) Plaintiffs also state, "Under the CBA, P.P.L. is required to employ Local 1 bricklayers to perform all work that falls within Local 1's jurisdiction and to make contributions at specified rates per hour worked to pay for the cost of [various benefits]." (*Id.* ¶ 2.) Further, Plaintiffs contend that "[t]he CBA provides that all signatories are subject to periodic audits of their payroll records in order to ascertain the full extent of the delinquency owed, if any, for a given period of time. . . . [and] Plaintiffs are

therefore permitted to audit Defendant's books and records in connection with P.P.L.'s obligation to submit benefit contributions to the Funds under the CBA." (*Id.* ¶ 5.) Contrarily, Defendant asserts in its defective Rule 56.1 Statement that "P.P.L. is not a party to a collective bargaining agreement," and "[a]s P.P.L. is not a party to the collective bargaining agreement, it is not subject to Plaintiffs' demand for an audit." (Defendant's Rule 56.1 Statement ("Def. 56.1"), Docket Entry No. 16-7, ¶¶ 2, 3.) Defendant does not contest that the CBA in question obligates signatories to submit to an audit. Accordingly, the dispute relevant to this motion turns on whether Defendant is party to a relevant CBA. (*See* Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment ("Def. Opp."), Docket Entry No. 16-6, at 4.) (disputing "the foundation of plaintiffs' action" that Plaintiffs and Defendant are parties to a CBA).

## II.     Disagreement Regarding the Collective Bargaining Agreement

A summary of the facts in this case, will be helpful in understanding the current dispute. In addition to contending that Defendant is a party to a CBA with Local 1, the Complaint also alleges that "[s]hop steward reports show that P.P.L. owes Plaintiffs $71,207.33 for the period covering July 2010 through April 2012. (Complaint ("Compl."), Docket Entry No. 1, ¶¶ 8-11.) In their Complaint, Plaintiffs only mention one CBA without any additional detail, and without attaching the CBA. (*See generally id.*) Pursuant to the terms of the CBA, Plaintiffs request "an order requiring Defendant P.P.L. to permit and to cooperate with Plaintiffs in the conduct of an audit of P.P.L.'s books and records for the payroll periods of the weeks beginning July 1, 2008, and continuing through the present time and to pay any delinquencies shown to be due as a result of such audit." (*Id.* ¶ 20.) In its response to the Complaint, Defendant admits to "being a party to a CBA," and also lists various payments it made to the Funds. (Defendant's Verified Answer, Docket Entry No. 4, ¶¶ 3-4.) Defendant also states that it is "not in arrears," and that its "account

is not delinquent." (*Id.* ¶¶ 5-6.) Lastly, Defendant asserts that if Plaintiffs do in fact have "[s]hop steward reports," such reports are "inaccurate, incomplete and incorrect." (*Id.* ¶ 8.)

At the initial conference before the magistrate judge held on January 25, 2013, Plaintiffs' counsel again requested an audit of Defendant's books and records. (Minute Entry, Docket Entry No. 8.) On February 28, 2013, Defendant informed Plaintiffs that it would not consent to an audit of its books and records on the ground that Defendant, after performing its own internal review, had concluded that it did not owe the damages alleged in the Complaint. (Pls. 56.1 ¶ 9.) After completing discovery and participating in a second conference before the magistrate judge, the parties were unable to settle on the terms of an audit, and agreed to proceed via a motion to compel. (Minute Entry, dated November 15, 2013.) This motion to compel came before this Court as the instant motion for partial summary judgment.

In their moving papers, Plaintiffs reiterate their claims that Defendant is a party to a CBA that "provides that all signatories are subject to periodic audits of their payroll records in order to ascertain the full extent of the delinquency owed, if any, for a given period of time." (Plaintiffs' Memorandum of Law in Support of Partial Summary Judgment ("Pls. Mot."), Docket Entry No. 16-1, at 3.) Plaintiffs add that "this motion follows to enforce the clear directives of the CBA to which Defendant is bound, and the firmly-established legal principals governing entitlement to injunctive relief under ERISA." (*Id.* at 3.) Plaintiffs attached various exhibits to their motion, including: (1) an unsigned CBA for the period of July 1, 2011 through June 30, 2014 ("2011-2014 CBA"), (2) the abovementioned shop steward reports, and (3) letters and telephone logs reflecting Plaintiffs' failed attempts to secure an audit of Defendant's books and records. (*See* Affidavit of Jeremiah Sullivan, Docket Entry No. 16-3, Exhibits A and B; Affidavit of Viorel Kuzma, Docket Entry No. 16-4, Exhibits A and B.)

In opposition, Defendant contends that it is not a party to the CBA in question, and that it has satisfied its financial obligations to the Funds. (*See* Def. Opp. at. 4-5.) In support of its opposition, Defendant submitted an affidavit from one of its officers, Julie Prosper. (*See* Affidavit of Julie Prosper ("Prosper Aff."), Docket Entry No. 16-8, ¶ 1.) Through this affidavit, Defendant admits to signing a CBA with Plaintiff for the period of July 1, 2005 through June 30, 2008 ("2005-2008 CBA"), but stresses that it has not signed any other contract with Plaintiffs since that time. (*Id.* ¶ 6) (noting that Ms. Prosper is "the only authorized signatory in this regard.") Ms. Prosper also asserts that Defendant is not a signatory to the CBA for the period of July 1, 2008 through June 30, 2011 ("2008-2011 CBA"), and the signature purporting to be hers, as a signatory for Defendant, is a forgery. (*Id.* ¶ 10.) Further, Defendant contends that, because it "was not a signatory to the CBA for the period July 1, 2011 to June 30, 2014," it not bound to its terms. (*Id.* ¶¶ 11-12.) Lastly, Defendant reiterates that it is not delinquent in paying any monies owed to Plaintiffs. (Def. Opp. at 5.)

Plaintiffs put forward three responses to Defendant's opposition: (1) Defendant waived its defense that it is not a party to a CBA, because it did not plead this defense in its verified answer; (2) Defendant's principal signed the 2008-2011 CBA and there is no proof that the signature page listing Ms. Prosper's signature is a forgery; and (3) though the 2011-2014 CBA does not have a signature page, a CBA need not be signed to be operative, so long as the parties agree to its substantive terms, which Plaintiffs claim is the situation here. (*See generally* Plaintiffs' Reply Memorandum in Further Support of Partial Summary Judgment ("Pls. Reply"), Docket Entry No. 16-18.)

For the reasons set forth below, Plaintiffs' motion for partial summary judgment is granted. There is no genuine dispute of material fact that Defendant must submit to an audit pursuant to a CBA.

## DISCUSSION

## I.    Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## II.     Defendant Has Not Waived its Forgery Defense Regarding the 2008-2011 CBA

Federal Rule of Procedure 8(c) provides, "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defenses." Plaintiffs argue that, pursuant to Rule 8(c), "P.P.L. cannot now claim it is not a party to the CBA when that defense was never raised in its Verified Answer. On the contrary, P.P.L. admitted to 'being a party to a CBA' in its response pleading." (Pls. Reply at 3.) "[G]enerally, failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." *Sompo Japan Ins. Co. of*

*Am. v. Norfolk So. Ry. Co.*, 762 F.3d 165, 176 (2d Cir. 2014) (citation omitted). Nonetheless, "a district court may entertain unpleaded affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004) (internal quotation omitted).

The Court rejects Plaintiffs' contention that Defendant waived its defense that it is not under any obligation pursuant to a CBA by failing to raise it in its answer, because Defendant is not asserting an affirmative defense. "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (citing Black's Law Dictionary 430 (7th ed. 1999)). A clear illustration of an affirmative defense is that the statute of limitations has expired, which, when timely asserted, does not challenge the veracity of a claim or its elements of proof, but nonetheless defeats it. An affirmative defense is different from a negating defense, which tends to disprove an element of the plaintiff's or prosecutor's case. *See FTC v. AMG Servs.*, 2014 WL 5454170, at *5 n.8 (D. Nev. Oct. 27, 2014) ("A negating defense, in contrast to an affirmative defense, 'tends to negate the existence of the elements' that the plaintiff must prove at trial.") (citing *Davis v. Allsbrooks*, 778 F.2d 168, 178 (4th Cir.1985)).

Here, Plaintiffs have presented no authority, and the Court has not discovered any, supporting a finding of waiver under these circumstances pursuant to Rule 8(c). Accordingly, the Court will consider Defendant's argument that it has no legal obligations pursuant to a CBA, because: (1) the last CBA it signed with Plaintiffs was the 2005-2008 CBA; (2) Defendant was

not a signatory to the 2008-2011 CBA, and any signature from Defendant on this CBA is a forgery; and (3) Defendant was not a signatory to the 2011-2014 CBA.

### III.    Defendant is Bound to the 2008-2011 and 2011-2014 CBAs

As noted above, in support of its contention that Defendant is bound to a CBA with Local 1, and, therefore, is required to submit to an audit of its books and records, Plaintiffs attached, *inter alia*, (1) a signed 2008-2011 CBA, which Defendant claims not to have signed, and (2) an unsigned 2011-2014 CBA. Nonetheless, whether Defendant did in fact sign these agreements is not dispositive. Even if Defendant did not sign a CBA subsequent to the 2005-2008 CBA, it nonetheless may be bound by such a later document. The Second Circuit has held that an obligation to make plan contributions under ERISA is not dependent on the obligee having signed the relevant CBA. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir. 1999) (holding that an unsigned CBA where the "employers agree to contribute a fixed dollar amount to the Fund contingent upon the number of hours its employees work" satisfied the written agreement prong of Section 302(c)(5)(B)). Indeed, "[a] writing other than a CBA may suffice if 'the employer has expressed an unequivocal intention to be bound in collective bargaining by group rather than individual action.'" *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 271 (E.D.N.Y. 2010) (citing *Wenzel v. Jeff Parking Corp.,* 1995 WL 258055 at *3 (S.D.N.Y. May 3, 1995); *see also American Federation of Television & Radio Artists, AFL-CIO v. Inner City Broadcasting Corp.*, 748 F.2d 884, 887 (2d Cir. 1984) ("A collective bargaining agreement need not be in writing if the parties have agreed to its substantive terms.").

In *Brown*, the employer had signed one collective bargaining agreement, but did not sign two subsequent collective bargaining agreements. 194 F.3d at 353. During the six-year time period covered by those subsequent collective bargaining agreements, however, the employer

submitted monthly remittance reports signed by the employer's president, which contained a phrase indicating that they were submitted in accordance with the collective bargaining agreement. *Id.* The employer also paid wages and contributed to the funds on behalf of its union employees at the rates specified in the collective bargaining agreement and allowed an audit of its books as required by the collective bargaining agreement even though most of the audit concerned months during which the employer was not a signatory to the collective bargaining agreement. *Id.* Finally, the employer sent a letter to the trust funds acknowledging its responsibility to the funds. *Id.* The Second Circuit found this conduct "sufficient, absent contrary evidence, to establish as a matter of law [the employer's] intent to adopt the two unsigned [collective bargaining agreements]." *Id.* at 355.

Similarly, in *Ferrara v. PJF Trucking LLC*, 2014 WL 4725494, at *9 (E.D.N.Y. Sept. 22, 2014), the court found that the employer "demonstrated the intent to be bound by the 2012 CBA in two ways, namely, by (1) failing to notify the Trustees of its desire not to renew its contract following the expiration of the 2009 CBA, and (2) continuing to submit remittance reports pursuant to the terms of the new 2012 CBA." The court took special notice of language within the remittance reports, which noted that the employer signing the remittance reports signified an agreement to accept the terms of the CBA covering the work performed by the employees. *Id.* at *9. The court added, "Given the language contained in the remittance reports, as well as the quantity of the reports submitted by Defendant in accordance with the provisions of the 2012 CBA - - and Defendant's previous undisputed status as a signatory to the expired 2009 CBA - - the Court finds ample evidence that Defendant intended to be bound to the terms of the 2012 CBA." *Id.* at *9.

In *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 271 (E.D.N.Y. 2010), the court held that in light of the employer's continued submission of remittance reports and status as a signatory to an old CBA, there was ample evidence to bind the employer to new CBA even in the absence of a signature. The court highlighted that "[t]hese remittance reports contain the provision that '[b]y signing this report you agree to accept the terms of the current Local 282 industry collective bargaining agreement covering the work performed by your employees.'" *Id.* (citing amended complaint.)

Various courts have reached similar conclusions. *See, e.g.*, *Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 346 (E.D.N.Y. 2009) (finding signed remittance reports referencing CBAs and paid contributions sufficient to constitute written agreements); *Trustees of the Chicago Plastering Institute Pension Trust et al. v. Solarcrete Energy Eff. Building Sys. Inc.*, 2009 WL 3055383, at *7 (N.D.Ill. Sept. 17, 2009) (holding that by sending in signed monthly reports for over ten years containing language affirming that the signatory was bound by the CBA and paying contributions, defendant demonstrated that it was operating as though it were bound by a CBA); *Moriarty v. Brust Funeral Home, Ltd.*, 1995 WL 472771, at *11 (N.D.Ill. Aug. 8, 1995) (holding that "timely filing of remittance reports together with payments to the funds . . . 'forcefully demonstrate' adoption of a collective bargaining agreement" where employer filed signed and unsigned monthly remittance reports for nine years) (citations omitted). Thus, a court should examine surrounding circumstances and the conduct of the parties to ascertain their intent with regard to a CBA. *See Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 182 v. New York State Teamsters Council Health & Hospital Fund*, 909 F. Supp. 102, 107 (N.D.N.Y. 1995). Accordingly, Defendant's argument

that it is not bound to the 2008-2011 and 2011-2014 CBAs merely because they lack its signature is unpersuasive.

The facts of the instant case are analogous to the foregoing cases and require a similar finding that Defendant intended to be bound to both the 2008-2011 and 2011-2014 CBAs. It is undisputed that Defendant signed the 2005-2008 CBA with Plaintiffs, and there is no suggestion that Defendant did not comply with the terms of that agreement. (*See* Prosper Aff. ¶ 6.) Moreover, Plaintiffs assert in their reply papers that "P.P.L. submitted remittance reports and corresponding payments to the Funds both before and after the expiration of the 2008-2011 collective bargaining agreement." (Pls. Reply at 6) (citing Reply Affidavit of Eleanor Santos ("Santos Reply Aff."), Docket Entry No. 16-19, ¶ 2.) Plaintiffs attached these remittance reports and payments to their reply brief as evidence that Defendant did intend to be bound by later CBAs. (Pls. Reply at 6.) Plaintiffs note, "These remittance reports contain a provision certifying 'that this is a true report of all hours paid during the report month, in accordance with the obligations assumed by this firm under the current applicable collective bargaining agreement and the provisions of the applicable trust agreements.'" (Pls. Reply at 6) (citing Santos Reply Aff. ¶ 3.) Lastly, the reports state that "any false statements or representation made in reporting on this form may subject [the signatory] to prosecution under [18 U.S.C. § 1027]."[1] (Santos Reply Aff. at ¶ 3.) The Court finds that, when taken as a whole, Defendant's conduct, namely its submission of benefit payments and remittance reports to the Funds, did manifest an intent to be bound by the 2008-2011 and 2011-2014 CBAs, and, therefore, Defendant is bound. This result is not impacted by Defendant's bald claims of forgery regarding the 2008-2011 CBA, as Defendant's signature on the CBA is not determinative.

---

[1] 18 U.S.C. § 1027 is a criminal statute which provides for fines or imprisonment for knowingly making a false statement, or knowingly concealing facts, in any document required by title I of ERISA.

While Defendant has not objected to the Court's consideration of the remittance reports and proof of payments attached to Plaintiffs' reply submission, the Court will briefly discuss the appropriateness of considering such evidence. "A district court enjoys broad discretion . . . to consider arguments made for the first time in a reply brief, [and] to rely on evidence submitted with the reply papers." *Compania del Bajo Caroni (Caromin), C.A. v. Bolivarian Rep. of Venez.*, 341 F. App'x 722, 724 (2d Cir. 2009) (summary order) (citing *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)). Although it is generally improper to submit in a reply evidentiary information that: (1) was available to the moving party at the time that it filed its initial motion, and (2) is necessary in order for that party to meet its burden, a court may choose to admit such evidence where the opposing party will suffer no prejudice. *See Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010); *see also Toure v. Central Parking Systems of New York*, 2007 WL 2872455, at *2 (S.D.N.Y. Sept. 28, 2007).

Under the circumstances of this case, Defendant cannot claim that it was blindsided by Plaintiffs' reliance on the arguments and evidence presented in their reply submission or that it was prejudiced by the Court's consideration of the arguments and evidence. First, the Second Circuit has long recognized that "reply papers may properly address new material issues raised in opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Ref. Co. v. Oxygenated Mktg. & Trading*, 215 F.3d 219, 226-27 (2d Cir. 2000) (citations omitted). Plaintiffs' reply is limited to issues newly raised in Defendant's opposition papers, including whether Defendant is bound the 2011-2014 CBA, which Plaintiffs provided to the Court in their initial moving papers. (*See generally* Pls. Mot.; Pls. Reply.) Plaintiffs did not have an obligation to anticipate in their opening papers the specific arguments Defendant raised in its opposition; their response to those arguments was properly raised in their reply. *See Toure*, 2007 WL

2872455 at *2 ("It appears, however, that the disputed materials do not raise new arguments, but rather respond to issues raised in opposition or amplify points already made on the initial motion.").

Second, if the Defendant did believe itself to be prejudiced by Plaintiffs' reply, Defendant "could have claimed surprise in [this] court and sought to file a responsive sur-reply." *Ruggiero*, 424 F.3d at 252. When Plaintiffs served their reply papers on Defendant on March 3, 2014, the instant motion was fully briefed. Thereafter, Defendant did not seek leave to address Plaintiffs' assertions regarding the remittance reports and payments, supporting the conclusion that Defendant was neither surprised nor prejudiced. *See Bayway*, 215 F.3d at 227 (holding that district court properly considered evidence submitted with plaintiff's reply brief where, *inter alia*, defendant "did not move the district court for leave to file a sur-reply to respond"); *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, 2013 WL 4012795, at *2 (D. Conn. Aug. 5, 2013) (collecting cases and noting that "[w]hen new evidence appears in opposition papers, the non-moving party should seek leave, or may receive the Court's *sua sponte* permission, to file a sur-reply to address those new issues") (citation omitted). Accordingly, the Court's consideration of this evidence is appropriate. Based on the totality of the circumstances, the Court finds that Defendant is bound to the terms of the 2008-2011 and 2011-2014 CBAs.

## IV. The 2008-2011 and 2011-2014 CBAs Permit an Audit

Plaintiffs seek an injunction requiring Defendant to meet its statutory and contractual obligations to permit a payroll audit of its books and records. Specifically, "Plaintiffs demand an order requiring Defendant P.P.L. to permit and to cooperate with Plaintiffs in the conduct of an audit of P.P.L.'s books and records for the payroll periods of the weeks beginning July 1, 2008,

and continuing through the present time and to pay any delinquencies shown to be due as a result of such audit." (Compl. at 4.)

The Funds are multi-employer, employee benefit plans under ERISA, while Defendant is an employer under the terms of that statute. *See* 29 U.S.C. §§ 1002(3), (5) and (37), 1132(d)(1), 1145. Section 515 of ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of a . . . collectively bargained agreement . . . make such contributions in accordance with the terms and conditions of such . . . agreement." 29 U.S.C. § 1145. Section 502(a)(3) provides that a fiduciary may bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable relief . . . to redress such violation or . . . to enforce any provision of this subchapter." 29 U.S.C. § 1132(a)(3). In an action brought under Section 502, the Court may award, in addition to monetary damages, "such other legal or equitable relief as the court deems appropriate." 29 U. S. C. § 1132(g)(2)(E). That relief "may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records." *Ferrara v. Pomarc Indus., Inc.*, 2013 WL 3990746, at *4 (E.D.N.Y. Aug. 5, 2013) (*quoting Lanzafame v. Dana Restoration, Inc.*, 2010 WL 6267657, at *13 (E.D.N.Y. Aug. 12, 2010)).

Both the 2008-2011 and 2011-2014 CBAs grant Plaintiffs the right to conduct periodic audits of the employer's payroll records in order to ascertain the full extent of the delinquency owed, if any, for a given period of time. More specifically, both CBAs have identical language and state in pertinent part: "The books and records of the Employer shall be made available at all reasonable times for inspection and audit by, but not limited to, the accountant outside independent auditors or other representatives of the Trustees of any of the Bricklayers Fringe

Benefit Funds." (*See* 2011-2014 CBA, Exhibit A to Sullivan Aff., at 15-16; 2008-2011 CBA, Prosper Aff., Exhibit A, at 14.) These CBAs further provide, "It shall be a violation of this Agreement for any Employer to fail to furnish proper payroll records when requested for the purpose of compelling an audit." (*See* 2011-2014 CBA, Exhibit A to Sullivan Aff. at 18; 2008-2011 CBA, Prosper Aff., Exhibit A, at 16.) Accordingly, Plaintiffs are permitted to audit Defendant's books and records for the requested period of July 1, 2008 through to the present day in connection with Defendant's obligation to submit benefit contributions to the Funds pursuant to the CBAs.

As Plaintiffs are entitled to compel an audit, Plaintiffs are granted 60 days from the date of this Order to conduct the audit. If necessary, within 30 days of the date the audit is completed, Plaintiffs may submit a letter to the Court requesting a trial date on the issue of damages, including any reasonable attorney's fees and costs. *See La Barbera v. A. Morrison Trucking, Inc.*, 2011 WL 703859, at *6 (E.D.N.Y. Feb. 18, 2011) (citing *Reilly v. Reem Contracting Corp.*, 380 Fed App'x 16, (2d Cir. 2010) for the proposition that, where the defendant disputes the amount of unpaid contributions calculated, "the more prudent approach is to hold a short bench trial at which [the defendant] can contest the amount of damages"); *New York District Council of Carpenters Pension Fund v. KW Constr., Inc.*, 2010 WL 3958799, at *5 (S.D.N.Y. Sept. 2, 2010) ("[I]nquiries into the reasonableness of the Funds' audits or the adequacy of the defendants' employee records are properly left for trial and the proper question in deciding the Fund's motion for summary judgment is whether defendant has submitted evidence that raises a factual dispute as to the amount of damages owing the Fund.") (internal citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is granted. Plaintiffs are granted 60 days from the date of this Order to conduct an audit of the Defendant's books and records for the period of July 1, 2008 through to the present day. If necessary, within 30 days of the date the audit is completed, Plaintiffs may submit a letter to the Court requesting a trial date on the issue of damages, including any reasonable attorney's fees and costs.

Defendant is admonished that failure to provide the appropriate books and records necessary to complete the audit or to otherwise fail to cooperate in the conducting of the audit, may result in a finding of contempt of this Court's Order and the imposition of sanctions.

SO ORDERED.

Dated: Brooklyn, New York
      March 27, 2015

_____/s/_____
          DORA L. IRIZARRY
      United States District Judge