UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
BRICKLAYERS INSURANCE AND :
WELFARE FUND, BRICKLAYERS :
PENSION FUND, BRICKLAYERS :
SUPPLEMENTAL ANNUITY FUND, :
BRICKLAYERS AND TROWEL TRADES :
INTERNATIONAL PENSION FUND, NEW :
YORK CITY AND LONG ISLAND JOINT :
APPRENTICESHIP AND TRAINING FUND, :
INTERNATIONAL MASONRY INSTITUTE, :
and JEREMIAH SULLIVAN, JR., in his :
fiduciary capacity as Administrator, :
BRICKLAYERS LOCAL 1, :
INTERNATIONAL UNION OF : **MEMORANDUM & ORDER**
BRICKLAYERS AND ALLIED CRAFT : 12-CV-3940 (DLI)(RML)
WORKERS, and BRICKLAYERS LABOR :
MANAGEMENT RELATIONS COMMITTEE, :
 :
                Plaintiffs, :
 :
             -against- :
 :
P.P.L. CONSTRUCTION SERVICES CORP., :
 :
                Defendant. :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

On August 8, 2012, Bricklayers Insurance and Welfare Fund ("Welfare Fund"), Bricklayers Pension Fund ("Pension Fund"), Bricklayers Supplemental Annuity Fund ("Annuity Fund"), Bricklayers and Trowel Trades International Pension Fund ("IPF"), New York City and Long Island Joint Apprenticeship and Training Fund ("JATC"), International Masonry Institute ("IMI"), Jeremiah Sullivan, Jr., Bricklayers Local 1 ("Local 1"), International Union of Bricklayers and Allied Craft Workers, and Bricklayers Labor Management Relations Committee ("LMRC") (collectively, "Plaintiffs" or the "Funds") filed a complaint in this Court against P.P.L. Construction Services Corp. ("Defendant") alleging that Defendant failed to make

required contributions to the Funds and pay dues checkoffs[1] in violation of Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. (Complaint ("Compl.") at ¶¶ 1, 8-11, Dkt. Entry No. 1.)

Plaintiffs further allege that Defendant has failed to cooperate in the auditing of its books and records for the 2008 through 2015 payroll periods in violation of the collective bargaining agreements ("CBAs") and this Court's Opinion & Order issued on March 27, 2015 directing Defendant to submit to such an audit under the threat of being found in contempt and having sanctions imposed for failure to cooperate. (Plaintiffs' Memorandum of Law in Support of Motion to Hold Defendant in Contempt and Impose Sanctions ("Pl. Mot. for Contempt") at 1, Dkt. Entry No. 21-8; *see generally* March 27, 2015 Opinion & Order granting Motion for Partial Summary Judgment ("March 27th Order"), Dkt. Entry No. 17.)

Before the Court is Plaintiffs' motion to hold Defendant in civil contempt of court and to impose sanctions for failure to comply with the March 27th Order. (Pl. Mot. for Contempt at 1, 11.) Specifically, Plaintiffs request that the Court direct Defendant to comply with the March 27th Order by immediately producing all missing documents to Plaintiffs' auditors on or before a date selected by the Court under the threat of a coercive fine for every day of noncompliance. (*Id*. at 11.) In the alternative, Plaintiffs request that the Court enter a default judgment and assess damages against Defendant pursuant to Federal Rule of Civil Procedure 55(a) in the amount of $231,353.32 for unremitted fringe benefit contributions and dues checkoffs for the period of 2009 through 2012. (*Id*. at 12.)

For the reasons set forth below, Plaintiffs' motion to hold Defendant in civil contempt of

---

[1] A dues checkoff is a voluntarily authorized and regular deduction of an employee's wages by an employer to pay off the union dues by deductions in earnings as opposed to separate individual payments.

2

court and to impose sanctions for failure to comply with the directives of the March 27th Order is granted. Defendant is directed to produce the requested records on or before May 2, 2016, and a fine of $250.00 will be imposed for each day that Defendant fails to produce all requested records to Plaintiffs' auditors. In light of this ruling, Plaintiffs' alternative motion to enter a default judgment against Defendant is denied, but without prejudice to renew should Defendant continue to defy this Court's Orders.

## BACKGROUND

Plaintiffs are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and multiemployer plans within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). (Compl. at ¶ 3; Pl. Mot. for Contempt at 1.)

Defendant is a party to multiple CBAs with Local 1, under which Defendant agreed to make contributions at specified rates per hour worked for the cost of: (1) pension benefits provided by the Pension Fund, Annuity Fund and IPF; (2) medical benefits provided by the Welfare Fund; and (3) training provided by the JATC and IMI. (Affidavit of Jeremiah Sullivan[2] ("Sullivan Aff.") at ¶¶ 2, 3, Dkt. Entry No. 21-1.) Defendant's additional obligations under the CBAs include: (1) taking after-tax deductions from employee wages for the Vacation Fund, which is a component of the Welfare Fund, at a specified rate per hour worked and remitting them to the Funds; and (2) transmitting after-tax hourly deductions from employee wages to the Funds for union dues. (*Id.* at ¶¶ 4, 5.)

Plaintiffs assert that shop steward reports covering the period from July 2010 to April 2012 reveal that Defendant owes the Funds $51,018.42 in unpaid benefit contributions for hours

---

[2] Jeremiah Sullivan is the president of Local 1, the Chairman of the Trustees of the Bricklayers Fringe Benefits Funds and the unpaid Administrator of same. (Sullivan Aff. at ¶ 1.)

worked by Local 1 bricklayers.[3] (Pl. Mot. for Contempt at 2.) Additionally, Plaintiffs argue that the same shop steward reports show that Defendant owes the Funds $5,455.73 in unremitted dues checkoffs assigned to Local 1 and contributions owed to LMRC for the same period.[4] (*Id.* at 2-3.)

The audit provisions of the CBAs mandate that Defendant's books and records relating to its obligations to remit benefit contributions to the Funds be made available for inspection and audit at all reasonable times to the appropriate representatives of the Funds. (Sullivan Aff., Exhibit A, Trade Agreement at 15-16, Dkt. Entry No. 21-2.) On January 25, 2013, at the initial conference before the Honorable Robert M. Levy, U.S.M.J., Plaintiffs proposed that Defendant submit to an audit of its books and records pursuant to the CBA in order to engage in meaningful settlement negotiations. (February 14, 2013 Status Report at 1, Dkt. Entry No. 9; Affidavit of Michael Minnefor, Esq.[5] ("Minnefor Aff.") at ¶ 5, Dkt. Entry No. 21-4.) On April 19, 2013, Plaintiffs filed a motion for a pre-motion conference to set a briefing schedule for Plaintiffs' motion for partial summary judgment and injunctive relief "on the issue of whether Local 1 and the Funds are entitled to an audit of P.P.L.'s books and records" due to Defendant's refusal to cooperate with an audit.[6] (Plaintiffs' Motion for Pre-Motion Conference, Dkt. Entry No. 10 at 2.)

---

[3] The $51,018.42 amount differs from the $64,310.94 amount stated in the complaint for the same period. (Compl. at ¶ 13.) This $13,292.52 differential represents the amount Defendant was credited for payments received for July 2010 and April 2012. (Plaintiffs' Motion for Pre-Motion Conference at 1, fn. 1, Dkt. Entry No. 10.)

[4] The $5,455.73 amount differs from the $6,896.39 amount stated in the complaint for the same period. (Compl. at ¶ 16.) This $1,440.66 reduction in dues checkoffs owed represents the amount Defendant was credited for payments received for July 2010 and April 2012. (Plaintiffs' Motion for Pre-Motion Conference at 1, fn. 1.)

[5] Michael Minnefor, Esq. is counsel for Plaintiffs. (Minnefor Aff. at ¶ 1.)

[6] By Order dated May 15, 2013, the Court denied Plaintiffs' motion for a pre-motion conference primarily because the proper recourse for the relief sought was not a motion for partial summary judgment or injunctive relief, but rather a motion to compel discovery before the magistrate judge.

On November 15, 2013, Plaintiffs and Defendant agreed that the most effective method to surmount the discovery impasse was to file a motion to compel an audit. On March 5, 2014, Plaintiffs filed a fully briefed motion for partial summary judgment seeking injunctive relief against Defendant for failure to submit to an audit in violation of the CBAs. (*See generally* Motion for Partial Summary Judgment, Dkt. Entry No. 16.) On March 27, 2015, this Court granted Plaintiffs' motion for partial summary judgment and directed Defendant to submit to an audit to be completed by May 26, 2015, under the threat of sanctions. (March 27th Order at 18.)

Pursuant to the March 27th Order, Plaintiffs arranged with Defendant to conduct an audit on May 8, 2015, but Defendant cancelled the audit because Defendant's accountant had not provided the complete necessary records. (Plaintiffs' June 3, 2015 Letter Requesting Extension ("June 3rd Letter"), Exhibit A, Email Correspondence from Kinnari Ramolia[7] to Michael Minnefor, Dkt. Entry No. 18.) The Court granted Plaintiffs' request to reschedule the audit to June 22, 2015. At the June 22, 2015 meeting, "Defendant provided incomplete weekly payroll records for the Court-ordered audit period." (Plaintiffs' September 25, 2015 Status Report ("Sept. 25th Status Report") at 1, Dkt. Entry No. 20.) In an effort to expedite the audit's completion by the impending July 4, 2015 deadline, Plaintiffs' auditors requested quarterly payroll summary reports and quarterly taxes, which Defendant also failed to provide. (*Id.*)

On July 24, 2015, Plaintiffs filed another letter requesting a 60-day extension to complete the audit because Defendant failed to provide the documents necessary to comply with the rescheduled June 22, 2015 audit. (*See generally* Plaintiffs' July 24, 2015 Letter Request for Extension ("July 24th Letter"), Dkt. Entry No. 19.) On July 27, 2015, the Court granted

---

[7] Kinnari Ramolia is an employee at Schultheis & Panettieri, LLP ("S&P"), which is an auditing firm retained by Plaintiffs to conduct the audit at issue. (June 3rd Letter, Exhibit A, Email Correspondence from Kinnari Ramolia to Michael Minnefor; Pl. Mot. for Contempt at 3.)

5

Plaintiffs' extension request and admonished Defendant for its failure to comply timely with the March 27th Order. The new deadline for completion of the audit was September 25, 2015.

On September 18, 2015, the Court issued an order reminding both Plaintiffs and Defendant to submit a status report no later than September 25, 2015 concerning the status of the audit and Defendant's compliance with this Court's previous orders. The Court further directed Plaintiffs to include in the status report a proposed briefing schedule for a motion to hold Defendant in civil contempt court and for the imposition of sanctions, if Defendant's lack of compliance continued.

On September 25, 2015, Plaintiffs filed a status report informing the Court that Defendant still had failed to provide Plaintiffs' auditors with a complete set of records for completion of the audit. (Sept. 25th Status Report at 1-2.) Plaintiffs reported that, on September 18, 2015, Defendant provided an annual payroll summary despite Plaintiffs' request for quarterly payroll summary reports. (*Id*. at 2.) Plaintiffs further stated that Defendant has not provided any records for the period covering the second half of 2008, "which is included in the Court-ordered audit period." (*Id*.) Accordingly, Plaintiffs proposed a briefing schedule for a motion to hold Defendant in contempt and the imposition of sanctions. (*Id*.)

Defendant claims that Plaintiffs have submitted multiple letters of demand wherein they have requested various monetary amounts toward fund contributions that are not consistent with the amounts listed in the complaint. (Memorandum in Opposition to Motion for Contempt ("Opp. Mem.") at 2, Dkt. Entry No. 26.) Defendant further contends that has it demonstrated reasonably diligent efforts to secure the required accounting records given that Defendant's former accountant was engrossed in the rigors of tax season and could not produce them timely. (*Id*. at 4.)

Plaintiffs counter that Defendant was afforded ample opportunity to comply with the many production requests and the delay in production was unreasonable because "the tax season ended well in advance of the Court's deadline extensions of July 4 and September 25, 2015." (Plaintiffs' Memorandum of Law in Further Support of Motion to Hold Defendant in Contempt and Impose Sanctions ("Pl. Reply") at 2, Dkt. Entry No. 28.) Moreover, Plaintiffs contest the veracity of Defendant's representations because Defendant failed to produce documentary evidence of the alleged communications it had with the accountant. (*Id.*)

## DISCUSSION

### I. Standard for Civil Contempt

The power to punish litigants for contempt is inherent in all courts, and "[a] sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party is civil" in nature. *New York State Nat. Organization for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989); *see United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947); *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 115 (2d Cir. 1988).

In the Second Circuit, in order to hold a party in civil contempt, the district court must find: (1) the issuance of a clear and unambiguous court order; (2) clear and convincing proof of noncompliance with said order; and (3) lack of reasonable diligence by defendant in attempting to accomplish what was ordered. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see also Drywall Tapers and Pointers, Local 1974 etc. v. Local 530 of Operative Plasterers & Cement Masons International Association*, 889 F.2d 389, 394 (2d Cir. 1989) (quoting *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981), *cert. denied*, 454 U.S. 832 (1981)). While the Court is prohibited from imposing sanctions punitively, coercive and compensatory inducements

7

appropriately may underlie the imposition of civil sanctions. *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 657 (2d Cir. 2004). Furthermore, it need not be established that a party's violation of a court order was willful in order to hold that party in contempt. *Id.* at 655; *see also Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984). "Inability to comply is, of course, a 'long-recognized defense to a civil contempt citation,' but the burden is on defendants to substantiate their claimed inability" without equivocation. *Donovan*, 726 F.2d at 59 (quoting *United States v. Wendy*, 575 F.2d 1025, 1030-31 (2d Cir. 1978)). However, prior to being adjudged in contempt, due process requires that a party must be properly noticed that it is a defendant in a contempt hearing. *Drywall Tapers and Pointers*, 889 F.2d at 394; *see* Fed. R. Crim. P. 42(b); *Remington Rand Corporation-Delaware v. Business Systems, Inc.*, 830 F.2d 1256, 1258 (3d Cir. 1987) (applying Rule 42(b) to civil cases); *Dole Fresh Fruit Co. v. United Banana Co., Inc.*, 821 F.2d 106, 109 (2d Cir. 1987) (same).

## II. Application

### A. Three-Pronged Analysis

#### 1) Clear and Unambiguous Court Orders

The March 27th Order was clear and unambiguous. It granted Plaintiffs 60 days to conduct an audit of Defendant's books and records for the period of July 1, 2008 through to the present. (March 27th Order at 18.) The Order also admonished Defendant and put it on notice "that failure to provide the appropriate books and records necessary to complete the audit or to otherwise fail to cooperate in the conducting of the audit, may result in a finding of contempt of this Court's Order and the imposition of sanctions." (*Id.*)

Pursuant to the March 27th Order, Plaintiffs made arrangements with Defendant's counsel to conduct an audit of Defendant's books and records on May 8, 2015. (Letter Requesting Extension by Plaintiffs at 1, Dkt. Entry No. 18.) However, that scheduled audit was cancelled because Defendant's accountant failed to provide Plaintiff's auditors with a complete set of records. (*Id.*) The parties jointly rescheduled the audit for June 22, 2015, and requested an extension of the deadline to complete the audit, which the Court granted by Order dated June 4, 2015. (*Id.*) Plaintiffs had until July 4, 2015 to conduct the audit.

The rescheduled June 22, 2015 audit never occurred because Defendant again failed to provide the specific books and records required to complete the audit by the new deadline. (Letter Requesting Extension by Plaintiffs at 1, Dkt. Entry No. 19.) Instead, Defendant provided incomplete weekly payroll records for the audit period rather than the requested quarterly payroll summary reports and quarterly taxes. (Status Report at 1, Dkt. Entry No. 20.) Defendant was given yet another opportunity to comply with the March 27 Order when on July 27, 2015, the Court granted Plaintiffs' request for another 60-day extension of the audit deadline. Again, the Court admonished Defendant for its failure to timely comply with the March 27th Order.

On September 18, 2015, the Court issued a Status Report Order reminding the parties that they are directed to submit a joint status report by September 25, 2015 outlining the status and progress of the audit and Defendant's compliance with the Court's previous orders compelling the production. The Court further ordered Plaintiffs to include in the status report a proposed briefing schedule for motion to hold Defendant in contempt if Defendant's non-compliance has continued. Again, Defendant was on notice that failure to comply could result in its being held in contempt.

On September 18, 2015, after providing Defendant with a detailed listing of the records required to complete the audit, Plaintiffs received another incomplete set of documents that included annual payroll summary reports rather than the requested quarterly reports. (Status Report at 1-2.) On September 25, 2015, Plaintiff filed a Status Report that outlined Defendant's continued lack of compliance with the Court's ordered production of all records required to conduct a full and complete audit. (*See generally Id.*) Notwithstanding Plaintiffs' auditor's representation that, "based on the information provided, [it could] draft a provisional audit that *estimates* the amount owed," any such report generated would be subject to future revision based on the incomplete set of records furnished by Defendant. (*Id.* at 2.) Pursuant to the Court's September 18, 2015 Order, Plaintiffs submitted a proposed briefing schedule for the instant motion. (*Id.*)

The clarity of the March 27th Order, as well as the June 4, 2015 and July 27, 2015 Orders, reasonably cannot be contested.

**2) Clear and Convincing Proof of Noncompliance with Court Orders**

Defendant's repeated failure to submit a complete set of records to Plaintiffs in order to conduct a comprehensive audit constitutes clear and convincing evidence of Defendant's noncompliance with the March 27th Order as well as with the provisions of the CBA. Partial submissions of payroll reports and tax records does not constitute compliance with the numerous court orders directing Defendant to provide Plaintiffs with all documents necessary to complete an audit of the period beginning July 1, 2008 through to the present, particularly when Plaintiffs repeatedly gave Defendant lists of the specific records requested and necessary for the audit.

Plaintiffs continually were forced to request extensions of the audit deadline due to Defendant's failures to supply a complete set of records to enable them to conduct a full audit.

In the July 27, 2015 Order, the Court, *inter alia*, admonished Defendant for its failure to timely comply with the March 27th Order and again directed Defendant to produce the required payroll and tax records by the new deadline. Defendant's subsequent failure to produce those records, necessitating the filing of the instant motion constitutes categorical noncompliance with the March 27th Order.

### 3) Lack of Reasonable Diligence in Compliance

As to the third and final prong of the civil contempt analysis, Defendant has proffered no evidence to demonstrate that Defendant exercised any diligence in attempting to comply with the March 27th Order or any of the subsequent audit deadline extensions. Instead, it offers excuses, none of which establish good cause for the failure to comply with the Court's orders. Defendant contends that, because the Court's audit deadline "coincided with [its] accountant's busiest time of year, income tax season," Defendant could not produce the requested records timely. (Opp. Mem. at 3-4.) Defendant further argues that its repeated requests to its former accountant to facilitate the production of the requested documents demonstrates reasonable diligence notwithstanding the fact that no production occurred. (*Id*. at 4.) Plaintiffs counter that tax season ended well in advance of the Court's deadline extensions of June 4, 2015 and July 27, 2015 deadlines. (Pl. Reply at 2.) Notably, Defendant was required to produce the records pursuant to the terms of the relevant CBAs even prior to the commencement of the instant litigation.

"'It is well established that the duty to preserve evidence arises when a party reasonably anticipates litigation.'" *Casale v. Kelly*, 710 F. Supp. 2d 347, 365 (S.D.N.Y. 2010) (quoting *Pension Committee University of Montreal Pension Plan v. Banc of America Securities*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010)). "[O]nce a party reasonably anticipates litigation, it must

suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 212 (S.D.N.Y. Oct. 22, 2003) (internal quotation marks omitted).

The present litigation commenced on August 8, 2012. Defendant's president and principal corporate officer, Julie Prosper, contends that her son, Robert, was the custodian of the requested payroll and tax records as they were stored on his laptop computer, and his untimely death rendered recovery of those documents difficult. (Affidavit of Julie Prosper ("Prosper Aff.") at ¶¶ 4-15, Dkt. Entry No. 25.) Robert passed away on May 1, 2012, months before the instant complaint was filed. Ms. Prosper states that she did not focus on records retention during the immediate aftermath of his death as she was grieving. (*Id.* at ¶¶ 2, 8.) The relevant payroll and tax records contained on Robert's laptop were ultimately unrecoverable because the device apparently was lost or misplaced during Robert's widow's relocation to another state. (*Id.* at ¶ 13.) Ms. Prosper claims that she did not have access to the laptop after Robert died. (*Id.* at ¶ 14.)

Notwithstanding the understandable grief attendant to the loss of a child, the storage of all relevant payroll and tax records for a business on a single misplaced electronic device without the aid of any backup storage does not absolve the entity of its obligation to preserve records in the event of litigation. It strains credulity to suggest that Defendant had no direct access to payroll and tax records in the immediate aftermath of Robert's death due to the disappearance of a laptop when Defendant still was a going business concern at the time. Regardless of the timetable of Robert's death vis-à-vis the commencement of this action, Defendant had a duty to preserve these records because they served as the basis of Defendant's monthly contributions to the benefit funds at issue pursuant to the CBAs.

Defendant also maintains that, because Defendant was audited several months prior to the commencement of this action and prior to Robert's death, Plaintiffs had full access to the relevant records in early 2012. (Prosper Aff. at ¶ 31.) Defendant further alleges that the CBA does not entitle Plaintiffs to conduct audits of periods already audited. (*Id*. at ¶ 39.) However, past compliance with payroll and tax records production is not the issue in the present matter and does not serve to inform the Court's assessment of Defendant's reasonable diligence in producing the currently requested records in compliance with this Court's Orders. Furthermore, the plain language of the relevant CBA provision defeats Defendant's arguments:

> The books and records of the Employer *shall be made available at all reasonable times* for inspection and audit by, but not limited to, the accountant, outside independent auditors or other representatives of the Trustees of any of the Bricklayers Fringe Benefit Funds. The Employer shall be required to disclose upon such audits all payrolls and payroll ledgers …W-2 forms, quarterly federal payroll tax returns (Form 941), quarterly state payroll tax returns (Forms WRS-4 and WRS-30), annual federal and state tax returns, … employer remittance reports, payroll and supporting checks, … contributions; payroll tax deductions; disability insurance premiums; … remittance reports and checks in support thereof, documents showing the job location at which each employee was employed, and any other documentation, concerning payment of fringe benefit contributions – for hours worked by Bricklayers remitted to multi-employer fringe benefit funds other than Bricklayers Fringe Benefit Funds described herein, and any other items concerning payrolls.

(Sullivan Aff., Exhibit A, Trade Agreement at 15-16, Dkt. Entry No. 21-2 (emphasis added).) This provision does not preclude Plaintiffs' request for certain payroll and tax records for audit purposes, whether or not the production of those documents are deemed duplicative based upon previous audits. Rather, this provision allows for the production of all records necessary to conduct a complete audit and is consistent with the March 27th Order.

Defendant's contention that Plaintiffs have not demonstrated that Defendant's failure to produce the requested records was willful or the product of "deceit, fraud, duplicity, contumacious or obstreperous conduct" is of no merit with respect to a civil contempt analysis.

(*Id*. at ¶ 44.) "It need not be established that the violation was willful." *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). The Court need only focus on whether Defendant's efforts to produce the requested records constituted reasonable diligence.

Defendant's provision of incomplete weekly payroll and tax records at the rescheduled June 22, 2015 audit and its failure to provide requested quarterly payroll reports and quarterly tax information from 2008 to 2012 demonstrated a lack of reasonable diligence in complying with the March 27th Order. (Affidavit of Viorel Kuzma[8] ("Kuzma Aff.") at ¶¶ 5-7, Dkt. Entry No. 21-6.) Defendant's submission of an incomplete set of responsive documents one week prior to the September 25, 2015 deadline does not constitute reasonable diligence. (*Id*. at ¶ 7.) Although Defendant produced annual payroll summaries covering 2009 through 2012, those reports were insufficient for audit purposes compared to the requested quarterly payroll records. (*Id*.) Moreover, Defendant failed to produce any records for the period covering the second half of 2008 after Plaintiffs had outlined the exact documents required in order to complete the audit. (*Id*.)

Additionally, Defendant's affidavits submitted in opposition to Plaintiffs' motion undermine its assertion that it made reasonably diligent efforts to comply with the March 27th Order. Defendant variously implies that, because a complete audit had been conducted several months prior to the commencement of this action, Plaintiffs should already be in possession of the requested documents thus nullifying their discovery demand. (Regina Felton Declaration in Opposition to Motion for Contempt ("Felton Decl.") at ¶ 4, Dkt. Entry No. 27; Prosper Aff. at ¶ 31.) This statement suggests that Defendant has chosen not to make its best efforts to comply

---

[8] Viorel Kuzma is "a staff member of the Payroll Compliance Department at the firm of Schultheis & Panettieri, LLP" and is conducting the audit at issue on Plaintiffs' behalf. (Viorel Aff. at ¶ 1.)

with the March 27th Order because it believes that Plaintiffs are not entitled to the requested documents.

Defendant's arguments are singularly unconvincing. Plaintiffs have established by clear and convincing evidence that Defendant failed to comply with the March 27th Order or make reasonably diligent efforts to do so. Accordingly, Plaintiffs' motion to hold Defendant in civil contempt of court and for the imposition of sanctions is granted.

**B. Coercive and Compensatory Nature of Sanctions**

While compensatory sanctions are principally designed to reimburse the aggrieved party for its actual damages, coercive sanctions serve a deterrent purpose. *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947). The Second Circuit has articulated certain factors for the court to consider in determining whether to impose coercive civil contempt sanctions: "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *Terry*, 886 F.2d at 1353. The ultimate consideration of whether the coercive sanction—here, a $250.00 per day fine—is reasonable in relation to the facts is a determination "left to the informed discretion of the district court." *Id.*; *see In re Grand Jury Witness*, 835 F.2d 437, 443 (2d Cir. 1987).

The Court's imposition of a $250.00 fine per day for each day that Defendant fails to comply with the March 27th Order constitutes a coercive sanction to which the Court must apply the analysis set forth in *Terry*. Without imposing some sanction based on Defendant's continued refusal to comply with their discovery obligations, this litigation would be prolonged unduly, straining the Court's and Plaintiffs' time and resources. More importantly, it would neutralize the Court's power and authority to enforce lawful orders. Furthermore, the threat of a daily fine

of $250.00 is a reasonable sanction designed to compel compliance with a lawful court order. Finally, since the fine is conditional, and thereby avoidable, there is no need to calibrate it to Defendant's financial resources. *New York State Nat. Organization for Women v. Terry*, 952 F. Supp. 1033, 1041 (S.D.N.Y. 1997). Therefore, the conditional sanctions satisfy the considerations enumerated in *Terry*.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion to hold Defendant in civil contempt of court and to impose sanctions for failure to comply with the directives of the March 27th Order is granted. Defendant is directed to produce the requested records on or before May 2, 2016, and a fine of $250.00 will be imposed for each day that Defendant fails to produce all requested records to Plaintiffs' auditors. In light of this ruling, Plaintiffs' alternative motion to enter a default judgment against Defendant is denied, but without prejudice to renew should Defendant continue to defy this Court's Orders.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2016

/s/
DORA L. IRIZARRY
United States District Judge